UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

IN RE: ANDREW SCOTT GRANOFF,      )
                                   )
                Debtor,            )
                                   )
_____  )
                                   )
ANDREW SCOTT GRANOFF,              )
                                   )
                Appellant,         )
                                   )
v.                                 )        No.:   3:20-CV-402-TAV-JEM
                                   )
W. GREY STEED,                     )
                                   )
                Appellee.          )

## MEMORANDUM OPINION

This matter is before the Court on appellant's appeal of United States Bankruptcy Judge Suzanne Bauknight's decision in *In re Granoff*, No. 3:17-BK-30295-SHB (Bankr. E.D. Tenn. Aug. 13, 2020). All parties have filed briefs [Docs. 7, 8],[1] and appellant filed a reply brief [Doc. 10]. For the reasons discussed *infra*, Judge Bauknight's decision will be **AFFIRMED**.

## I.    Background[2]

During their marriage, appellant and his ex-wife acquired a luxury estate (the "Property") [Doc. 6-15 p. 1]. The Property included several accommodations for

_____

[1] Appellee's brief adopts interested party Cheryl Jones's brief [Doc. 9].

[2] Judge Bauknight found for appellee even under appellant's version of the facts and thus did not undertake an "analysis of evaluating undisputed material facts" [Doc. 1-1 p. 7 n.3; *see* Doc. 7 p. 15 n.4]. Because the Court agrees that appellee is entitled to summary judgment even under appellant's version of the facts, this Part recounts appellant's version of the facts.

appellant's disability, which confined him to a wheelchair [*Id.* at 1, 5]. When appellant and his ex-wife divorced in 2006, their marital dissolution agreement (the "MDA") provided the Property would be sold, that the "ex-wife would receive $460,000 or 30% of the proceeds, whichever was greater," and that appellant "would receive the remaining portion" [*Id.* at 2]. Appellant believed this residual share was substantial, "worth $2,000,000 or more" [*Id.*]. The MDA required the Property to be sold within six years; otherwise, the Property was subject to sale at an action, and appellant and his ex-wife would split the auction proceeds [*Id.*]. Appellant and his ex-wife agreed appellant would continue living on the Property in the meantime [*See id.* at 3, 5]. When appellant and his ex-wife executed the MDA, the Property was free of encumbrances [*Id.* at 2]. In 2009, though, appellant and his ex-wife took out a loan from Browning Capital and Investment Corporation ("Browning Capital") to make needed repairs [*Id.* at 2–3].

Appellant "developed an idea which might allow him to [purchase and] continue living on the Property, while also paying his ex-wife" [*Id.* at 3]. Appellant's "idea . . . required an investor to purchase the Browning Capital promissory note and deed of trust, and, if necessary, initiate foreclosure proceedings on the Property" [*Id.*]. If appellant could obtain financing to acquire the Property before the auction, the investor would receive full payment under the promissory note, including charges and interest [*Id.* at 4]. However, if appellant could not acquire the Property before the auction, "the investor would proceed with a foreclosure and purchase the Property at the foreclosure sale for enough money to pay-off [appellant's] ex-wife . . . ." [*Id.*]. Appellant "would

Case 3:20-cv-00402-TAV-JEM   Document 11   Filed 03/03/22   Page 2 of 30   PageID #: 1607

then attempt to buy back the Property for the total amount spent by the investor in buying the Browning Capital promissory note, acquiring the Property at the foreclosure, and any related expenses, plus $100,000 profit to the investor" [*Id.*].

Eventually, David Jones ("Mr. Jones") agreed to this proposal, which appellant describes as an "investment opportunity" and "business proposition" [*Id.* at 5–6; Doc. 6-5 p. 13]. However, no signed writing or other document "memorialize[d] any understanding or agreement between" appellant and Mr. Jones, and the pair never considered themselves to be "in any business together" [Doc. 6-15 pp. 5–6]. Under appellant and Mr. Jones's arrangement, Mr. Jones purchased "the promissory note from Browning Capital on January 8, 2016," and appellant began seeking financing to purchase the Property from Mr. Jones [*Id.* at 6–7]. However, an issue arose when "a debt collector began trying to collect an old debt," which "made obtaining financing impossible" [*Id.* at 7]. Accordingly, appellant "determined that he would file bankruptcy to discharge the [old] debt," and "Mr. Jones agreed with this plan" [*Id.*].

Ultimately, the period in the MDA for selling the Property expired and thus the Property was subject to auction [*Id.* at 3, 7]. In the meantime, issues regarding the ex-wife's payment in the event of an auction had been before the Tennessee Court of Appeals, but as pertinent here, the Tennessee Court of Appeals determined the ex-wife "could proceed with auctioning the Property [at] a reserve price that [appellant] did not believe adequately protected him" [*Id.* at 7]. Accordingly, Mr. Jones foreclosed on the Property to ensure appellant and Mr. Jones retained control over it [*Id.*]. Appellant did

3

not interfere with the foreclosure sale; in fact, appellant "thought it was in his best interest for Mr. Jones to foreclose and buy the Property" because appellant believed he "would have a better chance of buying the Property back from Mr. Jones than" a third party [*Id.*]. The foreclosure sale occurred in December 2016, and Mr. Jones purchased the Property [*Id.* at 8].

On February 3, 2017, appellant filed a bankruptcy petition to discharge the old debt, and while he continued his efforts to purchase the Property, he could not obtain necessary financing [*Id.* at 8–10]. Appellant avers he still desired to live on the Property at this time, though, because the Property had accommodations for his disability, and appellant feared living in a home without such accommodations [*Id.* at 10–13]. Appellant also contends he would not have agreed to sell the Property at this time because he believed his new wife would not agree to leave the Property [*Id.* at 13].

Eventually, appellant accepted that he would not be able to arrange financing to purchase the Property and overcame "insecurities about the possibility of being required to move from" the Property [*Id.* at 12]. Meanwhile, in April or May 2017, Mr. Jones informed appellant he desired to sell the Property because appellant could not purchase it [*Id.* at 13]. Thus, appellant and Mr. Jones agreed that "the two of them [would] work together to sell the Property to maximize the sales price and share in the profits," and the pair executed a listing agreement [*Id.*] Appellant contends it was at this moment, months after appellant filed his bankruptcy petition, that appellant and Mr. Jones formed a

4

partnership for the purpose of selling the Property [*Id.* at 13–14]. Appellant and Mr. Jones immediately began working to sell the Property to a third party [*See id.* at 14–18].

On October 21, 2017, Mr. Jones died [*Id.* at 18]. Subsequently, appellant contacted Mr. Jones's widow and children, but appellant did not receive a response until January 2018 when he received a letter from Mrs. Jones claiming appellant "had abandoned the Property" [*Id.* at 19]. "[T]o protect and enforce his rights under the partnership Mr. Jones and [appellant] formed," appellant filed a lawsuit on July 5, 2018, "against Mrs. Jones in her capacity as personal representative and trustee of The David L. Jones 2006 Revocable Trust," Mr. Jones's beneficiary (the "State Court Action") [*Id.*].

The State Court Action complaint contains several allegations pertinent to this appeal. With respect to Mr. Jones's acquisition of the Browning Capital promissory note, the complaint alleges that appellant facilitated Mr. Brown's acquisition of the note by placing Mr. Jones in contact with an agent of Browning Capital [Doc. 6-5 p. 13]. With respect to the foreclosure sale, the complaint alleges that appellant "and Mr. Jones determined that Mr. Jones should initiate foreclosure proceedings" "to protect their relative interests in the Property" [*Id.* at 14]. Moreover, the complaint alleges "[t]he foreclosure sale was in no way adversarial between Mr. Jones and [appellant]. To the contrary, the sale was agreed to and was organized by both of them[, and appellant believed he could] obtain financing to enable him purchase [sic] the Property back from Mr. Jones" [*Id.*]. With respect to appellant and Mr. Jones's dealings as a whole, the complaint alleges that "third parties witnessed that [appellant] and Mr. Jones were at all

5

times cooperating with each other regarding all aspects of the Property, including [the] initial purchase of the promissory note . . . and the foreclosure of the Property" [*Id.* at 16]. Based on these facts and others, appellant sought, *inter alia*, imposition of a constructive trust [*Id.* at 19].

After appellant filed the State Court Action, the United States Trustee moved to reopen appellant's bankruptcy case, alleging the State Court Action is an asset of appellant's bankruptcy estate not disclosed or addressed during the initial proceedings, and Judge Bauknight reopened this case [Docs. 6-2, 6-3; *see also* Doc. 6-5]. Thereafter, appellee filed a motion to compromise the State Court Action pursuant to Federal Rule of Bankruptcy Procedure 9019 [Doc. 6-5].[3] Appellant objected, arguing the State Court Action is not part of appellant's bankruptcy estate [Doc. 6-6]. All parties filed motions for summary judgment, primarily debating whether the State Court Action is an asset of the bankruptcy estate [Docs. 6-9, 6-12, 6-14].

Judge Bauknight held the State Court Action is an asset of the bankruptcy estate and thus subject to compromise [Doc. 1-1 pp. 6–10]. Specifically, Judge Bauknight found appellant and Mr. Jones's prepetition conduct created a partnership between appellant and Mr. Jones based on appellant and Mr. Jones's extensive joint prepetition efforts [*Id.*]. Appellant now appeals Judge Bauknight's decision [Doc. 1].

---

[3] Rule 9019 provides that "[o]n motion by the trustee . . . the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Specifically, a bankruptcy judge may approve a compromise so long as "the agreement is both fair and equitable, and in the best interest of the estate." *In re High Tech Packaging, Inc.*, 397 B.R. 369, 371 (Bankr. N.D. Ohio 2008) (citations omitted). Judge Bauknight made such a finding in this case [*See* Doc. 1-1 pp. 11–12], and appellant has not appealed that determination.

6

## II.     Standard of Review

District courts have jurisdiction to review appeals from final judgements, orders, and decrees of judges of United States bankruptcy courts.  *See* 28 U.S.C. § 158(a).  On appeal, district courts review factual findings for clear error and conclusions of law de novo.  *Miller v. Edmunds* (*In re Mills*), No. 20-11306, 2021 U.S. Dist. LEXIS 139834, at *1–2 (E.D. Mich. July 27, 2021) (citing *McMillan v. LTV Steel, Inc.*, 555 F.3d 218, 225 (6th Cir. 2009)).  The parties agree de novo review applies in this case because the present issues are purely legal.

## III.     Analysis

The instant appeal regards Judge Bauknight's decisions as to the parties' motions for summary judgment.  Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In ruling on a motion for summary judgment, the court must draw "all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  The moving party bears the burden of establishing that no genuine issues of material fact exist and may meet this burden by affirmatively proving its case or by highlighting the absence of support for the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003).

7

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citation omitted). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record, including depositions, documents, affidavits, and other materials, upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *see also* Fed. R. Civ. P. 56(c)(1)(A). There must be more than a "mere scintilla of evidence" to withstand a motion for summary judgment. *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007) (citation omitted). And any genuine issue of fact must be material; that is, it must involve "facts that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. The Court may not weigh the evidence or assess credibility; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the nonmovant. *Id.* at 249. If a reasonable juror could not find for the nonmovant, the Court must grant summary judgment. *See Celotex*, 477 U.S. at 323.

Appellant raises two issues on appeal. First, appellant argues Judge Bauknight erroneously determined that appellant formed a prepetition partnership with Mr. Jones and that appellant had a corresponding prepetition partnership interest subject to appellant's bankruptcy proceedings [Doc. 7 pp. 28–35]. Second, appellant argues that

even if appellant had a prepetition interest, the State Court Action is not based on that interest [*Id.* at 36–40]. The Court first addresses appellant's second argument.

### A. The State Court Action as an Asset of the Bankruptcy Estate

Appellant argues the State Court Action is not an asset of the bankruptcy estate regardless of the nature of appellant's interest in the Property because the relief sought in the State Court Action is not based on any prepetition interest [Doc. 7 p. 38].[4] Appellant argues the State Court Action seeks relief based on events that occurred after appellant filed his bankruptcy petition [*Id.* at 38–39]. Namely, the State Court Action seeks dissolution of a partnership (which appellant alleges was formed after he filed his petition) and imposition of a constructive or resulting trust based on appellant's efforts in helping Mr. Jones sell the Property (which appellant avers occurred after he filed his petition) [*Id.*].

Appellee responds that the State Court Action is an asset of the bankruptcy estate [Doc. 45 p. 53]. First, appellee argues a partnership was formed before, not after, appellant filed his bankruptcy petition [*Id.* at 53–54]. Second, appellee notes that the State Court Action contains a claim for a resulting or constructive trust, and either of these remedies derive from conduct that occurred before appellant filed his bankruptcy petition [*Id.* at 58–61].

---

[4] Appellant suggests that even if appellant held some prepetition interest, it was an interest in an option contract that would have been unenforceable because it was not in writing or supported by consideration [Doc. 7 p. 37]. As discussed in Part III.B, the Court finds appellant held a prepetition partnership interest. Therefore, appellant's argument is moot.

9

The Court first notes the reason it is appropriate to address the instant argument before addressing whether appellant and Mr. Jones formed a prepetition partnership. The parties assume without explanation that whether the State Court Action is part of the bankruptcy estate depends on whether a prepetition partnership existed. Ultimately, the parties are correct, but the Court finds it necessary to explain the reason this appeal turns on whether the parties formed a prepetition partnership. In so doing, the Court reviews the general guidelines for determining whether an asset is part of a bankruptcy estate.

A bankruptcy estate "is comprised of . . . all legal or equitable interests of the debtor in *property* as of the commencement of the case." 11 U.S.C. § 541(a)(1) (emphasis added). "'Property' is construed 'generously' under the Bankruptcy Code" to include "[e]very conceivable interest of the debtor." *Tyler v. DH Cap. Mgmt.*, 736 F.3d 455, 461 (6th Cir. 2013) (citations omitted). Generally, to determine whether specific property is part of a debtor's bankruptcy estate, courts consider whether the property is "sufficiently rooted in the pre-bankruptcy past and so little entangled with the [debtor's] ability to make an unencumbered fresh start that it should be regarded as 'property' . . . ." *In re Davis*, 589 B.R. 146, 149 (Bankr. E.D. Tenn. 2018) (alteration in original) (citation omitted). "[P]roperty . . . that is not abandoned . . . and that is not administered in the case remains property of the estate." 11 U.S.C. § 554(d); *see also In re Wright*, 566 B.R. 457, 463 (B.A.P. 6th Cir. 2017) ("[I]f a debtor fails to schedule property, it is not abandoned upon closure of the case, but remains property of the estate." (citations omitted)). "The nature and extent of property rights in bankruptcy are

10

determined by the 'underlying substantive law,'" but federal bankruptcy law determines whether a property interest is part of a bankruptcy estate. *Tyler*, 736 F.3d at 461 (6th Cir. 2013) (citation omitted).

Here, the asset at issue (i.e., the State Court Action) is a cause of action. A cause of action is "sufficiently rooted" in pre-bankruptcy past such that it is an asset of a bankruptcy estate only if it is based on a "pre-petition injury" of the claimant. *In re Underhill*, 579 F. App'x 480, 482 (6th Cir. 2014); *see also Tyler*, 736 F.3d at 462. Thus, the Court must consider whether the State Court Action derives from a prepetition injury of appellant. Unlike the parties assume, the fact that the alleged partnership's formation is based on the same facts as the State Court Action is not dispositive. *See Underhill*, 579 F. App'x at 482 ("[P]re-petition conduct or facts alone will not 'root' a claim in the past; there must be a pre-petition violation." (citation omitted)).

*Inter alia*, the State Court Action seeks relief in the form of a constructive trust [Doc. 6-5 p. 19]. A plaintiff seeking imposition of a constructive trust suffers the relevant injury when the defendant "procures the legal title to [the] property in violation of a duty to the actual owner . . . ." *Estate of Queener v. Helton*, 119 S.W.3d 682, 687 (Tenn. Ct. App. 2003) (citation omitted); *see also Brewco, LLC v. Scent*, No. E2018-2133-COA-R3-CV, 2019 Tenn. App. LEXIS 525, at *21–22 (Oct. 29, 2019) (considering circumstances at the time of a foreclosure sale during a constructive trust analysis because the sale date was the date the defendant received title to the property).

Accordingly, the Court finds the State Court Action derives from an alleged injury that necessarily occurred before appellant filed his petition because whether Mr. Jones procured legal title to the Property in violation of appellant's rights necessarily depends on appellant's rights at the time of the foreclosure sale and deed transfer, which both occurred prepetition. Stated differently, the Court must consider appellant's rights when the foreclosure sale and deed transfer occurred—including whether he had a prepetition partnership interest—to determine whether his rights were violated at that time and thus whether imposition of a constructive trust would be appropriate. Consequently, to determine whether the State Court Action is part of the bankruptcy estate, the Court must determine whether the parties formed a prepetition partnership.[5] Thus, the Court rejects

---

[5] The Court notes confusion among the filings in this case regarding whether the asset at issue is truly the State Court Action rather than the alleged partnership interest itself. Judge Bauknight stated the ultimate question in this case is "who owns the State Court [Action]" but also stated, "although the Chapter 7 Trustee asks to settle a lawsuit, the asset in question is not the [State Court Action] but [appellant's] interest in a partnership" [Doc. 1-1 p. 4]. Additionally, the parties' briefing inconsistently identifies the asset at issue [*Compare* Doc. 7 p. 37 ("[T]he State Court Action is not an asset of the bankruptcy estate . . . ."), *and* Doc. 8 p. 53 (noting the State Court Action is "firmly rooted" in prepetition conduct), *with* Doc. 7 p. 37 (suggesting the asset at issue is the alleged partnership interest itself—which appellant contends is an option—in stating "the alleged verbal option . . . was . . . not an asset of [the] bankruptcy estate"), *and* Doc. 8 p. 30 ("The Bankruptcy Court correctly concluded that [appellant's] interest in the prepetition implied partnership . . . is property of the [his] bankruptcy estate . . . .")].

The Court finds the asset at issue is the State Court Action and not the prepetition partnership interest. The United States Trustee sought to reopen this case because it became aware of "additional assets that are likely property of the bankruptcy estate" [Doc 6-2 p. 1]. Subsequent filings reflect that the "additional" asset at issue is the State Court Action [*See, e.g.*, Doc. 6-5 pp. 1–4; Doc. 6-6 p. 3 (stating the State Court Action (not the partnership interest) was "not rooted in the [appellant's] pre-bankruptcy past"); Doc. 6-9 p. 1 ("[T]he State Court [Action] is an asset of the bankruptcy estate . . . ."); Doc. 6-14 p. 1 ("[T]he lawsuit . . . is not property of the estate . . . .")].

Even if the asset at issue was the partnership interest itself, this case would still turn on whether appellant and Mr. Jones formed a prepetition partnership because a partnership interest is part of a bankruptcy estate only if the underlying partnership existed when the bankruptcy

12

appellant's argument that the State Court Action is not based on his alleged prepetition partnership interest [*See* Doc. 7 pp. 38–39].

The Court now considers whether the parties formed a prepetition partnership.

### B.     Prepetition Partnership

The parties dispute whether Judge Bauknight correctly concluded that appellant and Mr. Jones's prepetition relationship constituted a partnership.  Because bankruptcy property rights are determined by the underlying substantive law and the interest at issue turns on Tennessee partnership law, the Court will apply Tennessee partnership law in resolving this issue. *See Tyler v. DH Cap. Mgmt.*, 736 F.3d 455, 461 (6th Cir. 2013) (citation omitted).

A partnership is "the association of two (2) or more persons to carry on as co-owners of a business for profit . . . whether or not the persons intend to form a partnership."  T.C.A. § 61-1-202(a) (2001).  The Tennessee Supreme Court has explained the test for determining whether a partnership exists:

> In determining whether one is a partner, no one fact or circumstance may be pointed to as a conclusive test, but each case must be decided upon consideration of all relevant facts, actions, and conduct of the parties. . . . If the parties' business brings them within the scope of a joint business undertaking for mutual profit—that is to say if they place their money, assets, labor, or skill in commerce with the understanding that profits will be shared between them—the result is a partnership whether or not the parties understood that it would be so. . . .
> Moreover, the existence of a partnership depends upon the intention of the parties, and the controlling intention in this regard is that ascertainable from the acts of the parties. . . . Although a contract of partnership, either express

petition was filed.  *See In re Johnson*, 565 B.R. 835, 840–41 (Bankr. S.D. Ohio 2017); *see also* 11 U.S.C. § 541(a)(1) (stating the bankruptcy estate consists of property of the debtor "as of the commencement of the case.").

or implied, is essential[,] . . . it is not essential that the parties actually intend to become partners. . . . The existence of a partnership is not a question of the parties' undisclosed intention or even the terminology they use to describe their relationship, nor is it necessary that the parties have an understanding of the legal effect of their acts. . . . It is the intent to do the things which constitute a partnership that determines whether individuals are partners, regardless if it is their purpose to create or avoid the relationship. . . .

*Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991) (footnotes omitted) (citations omitted). Thus, a partnership exists if, based on the totality of the circumstances and the parties' conduct, "the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money." *Id.* When there is no written partnership agreement, "the proponent of the partnership must prove the existence of the partnership by clear and convincing evidence." *Lewis v. Calvert*, No. 3:17-CV-19, 2019 U.S. Dist. LEXIS 10841, at *7 (M.D. Tenn. Jan. 23, 2019) (citing *Bowman v. Benouttas*, 519 S.W.3d 586, 600 (Tenn. Ct. App. 2016)).

Appellant raises two issues with respect to whether appellant and Mr. Jones formed a prepetition partnership: (1) whether appellant and Mr. Jones entered a "joint business"; and (2) whether appellant and Mr. Jones "shared profits." For the reasons discussed below, the Court finds Judge Bauknight correctly found appellant and Mr. Jones formed a prepetition partnership. Thus, for the reasons stated in Part III.A., the Court finds the State Court Action is a part of appellant's bankruptcy estate.

### 1. Joint Business

Appellant argues no joint business existed before appellant filed his petition because Mr. Jones was the undisputed and sole owner of the Property, and therefore,

14

appellant had no control over the Property [Doc. 7 pp. 30–31]. Appellant explains that Mr. Jones had unilateral authority to decide whether to sell the Property to appellant, convey it to a third party, or keep it for himself [*Id.* at 31]. By contrast, appellant notes he had no rights to make decisions regarding the Property [*Id.*]. Appellant argues that at most, his and Mr. Jones's relationship was a potential business relationship contingent on appellant obtaining financing and that no business entity ever formed because appellant never secured financing [Doc. 10 pp. 7–9].

Appellee responds that Judge Bauknight correctly found that appellant and Mr. Jones formed a prepetition joint business [Doc. 8 p. 36]. Appellee recounts facts that appellee avers support a finding of partnership [*See id.* at 34–40]. Appellee also argues the fact that title to the Property belonged to Mr. Jones is irrelevant because the circumstances demonstrate Mr. Jones had control over the Property [*Id.* at 39–42]. Thus, appellee avers the parties' cooperation *ab initio* created a joint business wherein appellant coordinated with Mr. Jones to secure and control the Property with the ultimate goal of allowing both men to profit [*Id.* at 36–37].

The first issue the Court must address is whether appellant and Mr. Jones had a "joint business" as described by the Tennessee Supreme Court in *Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991). This determination requires the Court to consider all of the facts and circumstances. *See id.* Additionally, the parties agree the Court must consider whether the alleged partners had "common control" in the partnership [Doc. 7 pp. 30–31; Doc. 8 pp. 39–42]. *See Bush v. Taylor* (*In re Taylor & Assocs., L.P.*), 249 B.R. 474, 479

(E.D. Tenn. 1998). *See generally* T.C.A. § 61-1-401(f) (2001) ("Each partner has equal rights in the management and conduct of the partnership business.").

The Court finds that appellant and Mr. Jones had a prepetition joint business. In short, appellant and Mr. Jones combined their assets, labor, skill, and experience to acquire and maintain complete control over the Property with the end goal of both appellant and Mr. Jones benefitting. *See Bass*, 814 S.W.2d at 41. Third parties recognized that at all relevant times, appellant and Mr. Jones consistently "cooperat[ed] with each other regarding all aspects of the Property, including Mr. Jones' initial purchase of the promissory note and deed of trust . . . and the foreclosure of the Property" [Doc. 6-5 p. 16]. The Court need not determine precisely when the joint business was formed (e.g., when appellant pitched the idea to Mr. Jones, when Mr. Jones secured the promissory note and deed of trust, at the foreclosure sale, etc.). It is sufficient to find that a partnership formed at some time before appellant filed his petition based on the following facts.

In the beginning, appellant approached Mr. Jones with what appellant recognized was a "business proposition" [*Id.* at 13]. Before this time, Mr. Jones was not aware of the Property, and the opportunity for appellant and Mr. Jones to jointly benefit from the "business proposition" did not exist. After Mr. Jones accepted this proposition, appellant assisted Mr. Jones in acquiring the promissory note and deed of trust by informing Browning Capital that Mr. Jones would be applying for a loan [*Id.*].

16

Later, when an auction of the Property became imminent, appellant and Mr. Jones cooperated to ensure they maintained control over the Property. They jointly determined that Mr. Jones should initiate foreclosure proceedings with the end partnership goal that Mr. Jones would inevitably sell the Property to appellant [*Id.* at 14]. The "foreclosure sale was in no way adversarial between" appellant and Mr. Jones and was instead "agreed to and organized by both of them" because appellant understood and expected he "would be able to obtain financing to enable him to purchase the Property back from Mr. Jones" [*Id.*]. In fact, appellant believed it was in his best interest for Mr. Jones to initiate a foreclosure and purchase the Property [Doc. 6-15 p. 7].

Other facts also demonstrate appellant and Mr. Jones's joint business. When appellant could not obtain financing due to an old debt, appellant and "Mr. Jones agreed" that appellant should file bankruptcy [*Id.*]. Second, throughout all of these events, appellant lived on the Property [*Id.* at 3, 5].[6] The Court notes that whether appellant and Mr. Jones considered themselves to be partners is irrelevant because they did "the things which constitute a partnership . . . regardless if it [was] their purpose to create or avoid the relationship." *See Bass*, 814 S.W.2d at 41. For the foregoing reasons, the facts

---

[6] In light of Tennessee's Dead Man's Act, Tennessee Code Annotated § 24-1-203, the parties dispute whether the Court can consider certain evidence [*See* Doc. 7 pp. 39–40; Doc. 8 pp. 54–58; Doc. 10 pp. 15–18]. Specifically, appellant contends that he would not have entered a prepetition partnership due to his disability and his related concerns about selling the Property [*See* Doc. 7 p. 39]. For the reasons stated, the totality of the circumstances suggest appellant and Mr. Jones formed a prepetition partnership even if appellant's goal had been to keep the Property. Indeed, Mr. Jones still would have shared profits from the partnership by receiving the net equity in the Property that appellant could recognize after he obtained the Property by selling it, devising it, or otherwise. This finding renders moot the issue surrounding whether the Court can consider the challenged evidence because even considering this evidence, the Court still finds a prepetition partnership existed.

17

support a finding that appellant and Mr. Jones cooperated and carried on a prepetition joint business.[7]

Some courts further specify that a partnership must "result from a meeting of the minds in mutual assent to terms, must be based upon sufficient consideration, and must be sufficiently definite." *Romglobal, Inc. v. Miller*, No. E2019-58-COA-R3-CV, 2020 Tenn. App. LEXIS 37, at *13 (Jan. 29, 2020) (citation omitted). The Court finds the instant partnership satisfies these three elements. First, the foregoing facts reflect that appellant and Mr. Jones had a "meeting of the minds" in that each agreed to cooperate with the joint goal described above. Second, the partnership was based on sufficient consideration as Mr. Jones offered appellant the opportunity to retain and sell the Property and appellant offered Mr. Jones potential monetary profit. Finally, the partnership terms were sufficiently definite because appellant would work to obtain financing to repurchase the Property, Mr. Jones would provide intermittent financing where necessary, and the men would jointly make decisions with respect to all aspects of their partnership. These terms are sufficient; it cannot be expected that every minute detail of a partnership will be determined before formation, particularly where no written partnership agreement exists. *See Jamestowne on Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 565 (Tenn. Ct. App. 1990) (noting a contract is sufficiently

---

[7] As appellee argues, postpetition facts are not relevant [*See* Doc. 8 p. 28]. Even if the nature and goals of appellant and Mr. Jones's partnership changed after appellant filed his bankruptcy petition, the facts above demonstrate appellant and Mr. Jones formed a prepetition partnership.

18

definite so long as a court can "ascertain just what is required of the respective parties in the[ir] performance").

Next, the Court rejects a number of appellant's arguments that no prepetition partnership existed. First, the Court rejects the argument that appellant had no control over the Property because Mr. Jones held legal title [Doc. 7 pp. 30–31]. As a preliminary matter, appellant's own contentions demonstrate appellant in fact exercised control over the Property. Appellant himself alleged that he "*and* Mr. Jones *determined* that Mr. Jones should initiate foreclosure proceedings," and "the sale *was agreed to and organized by both* of them" [Doc. 6-5 p. 14 (emphasis added)]. Appellant also recognized he had an interest in the Property even though he did not personally own the Property [*See id.*].

Additionally, the Court finds appellant had control over the Property as a matter of law because it was partnership property rather than Mr. Jones's personal property. It is true that property acquired in the name of a single partner is presumed to be personal property of the partner rather than partnership property. T.C.A. § 61-1-204(d) (2001). But, as the Middle District of Tennessee Bankruptcy Court stated:

> The intent of the partners determines what property shall be considered partnership property as distinguished from separate property. Such intention of the partners must be determined from their apparent intention at the time the property was acquired, as shown by the facts and circumstances surrounding the transaction of purchase, considered with the conduct of the parties toward the property after the purchase.

*In re Fulton*, 43 B.R. 273, 275 (Bankr. M.D. Tenn. 1984) (citation omitted). The Tennessee Court of Appeals has recognized the determination of whether property is

19

partnership property "is basically the same . . . facts and circumstances analysis promulgated by [the Tennessee Supreme Court in *Bass*] to determine the existence of an implied partnership." *Norris v. Norris*, No. 3A01-9403-CH-101, 1994 Tenn. App. LEXIS 520, at *21 (Sept. 15, 1994).[8]

Given the analyses for determining whether an implied partnership exists and whether property is partnership property turn on the same factors, the Court finds its analysis stated *supra* as to the facts and circumstances that support finding a prepetition partnership existed also support finding that the Property was partnership property. The Court finds that these same facts and circumstances rebut the presumption that Mr. Jones owned the Property personally merely because he was the title owner. Additionally, the Court notes the entire purpose of the partnership was to control the Property, and it would be inconsistent to hold a prepetition partnership existed to control the Property while also holding that the Property itself was not a partnership asset. Accordingly, because the Property was partnership property, and given appellant and Mr. Jones had joint decision-making authority in the partnership, it is clear appellant had control over the Property.

_____

[8] Among other factors, the Court should consider:

> (1) the parties' statements, conduct, and writings when the property was acquired, (2) the parties' course of conduct after the acquisition of the property, (3) the use of the property in the partnership business, (4) the terms of the partnership agreement, (5) the listing of the property as an asset on the partnership books and tax returns, (6) the attribution of profits or losses from the property to the partnership, and (7) the use of partnership funds to maintain the property.

*Leckrone v. Walker*, No. M1998-974-COA-R3-CV, 2002 Tenn. App. LEXIS 309, at *12–13 (Apr. 30, 2002) (citations omitted). For the reasons stated, the Court finds these factors weigh in favor of finding the Property was partnership property.

Second, the Court rejects the argument that appellant and Mr. Jones's arrangement was merely a potential business arrangement that never evolved into a partnership [Doc. 10 pp. 7–9]. Specifically, appellant cites *Thompson, Ventulett, Stainback & Assocs., Inc. v. Bob Evans Grp., Inc.*, 952 F.2d 403, 1992 U.S. App. LEXIS 38269 (6th Cir. 1992) (unpublished table decision) (applying Tennessee law), and other out-of-circuit authority for the proposition that where parties agree to engage in a joint business only upon the occurrence of some condition, the partnership does not exist until that condition occurs [Doc. 10 p. 8]. Appellant argues the instant partnership was contingent on appellant obtaining financing to repurchase the Property and thus the partnership never existed because appellant never obtained financing [*Id.* at 8–9].

In *Thompson*, an individual consulted with a company and others concerning a potential construction project and selected the plaintiff to serve as the project's architect. 1992 U.S. App. LEXIS 38269, at *1–2. The plaintiff sued when an underlying deal failed when required financing was not obtained because no acceptable design plans were submitted. *See id.* at *2–4, *3 n.3, *4 n.4. The plaintiff alleged it and the defendants had formed a partnership. *Id.* at *7. The Sixth Circuit rejected this argument, stating that "[b]ecause financing for the project was not obtained" because no acceptable design plans were submitted, "no partnership existed." *Id.* at *8–9. The Sixth Circuit continued that "there [was] no evidence that the parties intended to engage in a joint venture or partnership [and other evidence] indicate[d] an intent to the contrary." *Id.* at *9.

21

The Court finds *Thompson* distinguishable. First, in *Thompson*, the Sixth Circuit made clear there was "no evidence" that the parties formed a business entity, and indeed, evidence to the contrary existed. *Id.* at *9. Here, though, as discussed *supra*, there is significant evidence that appellant and Mr. Jones formed a partnership. Second, the nature of the financing contingency in *Thompson* is fundamentally different from appellant's financing in this case. In *Thompson*, the financing contingency existed in a written contract between other entities involved in the project, which was executed well before the plaintiff had been hired and thus the plaintiff should have been aware its services would not be needed if the required financing was not acquired. *See id.* at *2–3, *3 n.3. Here, though, at the outset of appellant and Mr. Jones's relationship, Mr. Jones assumed the risk that appellant would not obtain financing, and Mr. Jones's services were required immediately. After all, the entire need for the partnership was that appellant could not personally finance the purchase of the Property. For these reasons, the Court finds the partnership in this case had no financing contingency.

Third, the Court rejects appellant's argument that appellant and Mr. Jones's relationship is more akin to a buyer-seller or some other relationship than a partnership [*See* Doc. 7 pp. 31, 34–35]. The Court finds the instant relationship is not akin to a buyer-seller relationship because appellant was not merely a potential purchaser of the Property. Indeed, if appellant simply desired to purchase the Property, he could have done so without Mr. Jones. Instead, appellant and Mr. Jones's relationship was necessary because appellant could not purchase the Property. And unlike a buyer whose "profit"

22

from the arrangement is ownership of the subject property and a seller whose profit is the proceeds from the sale, appellant and Mr. Jones shared profits from the same source: namely, all residual profits from their relationship.[9]

Finally, the Court rejects appellant's argument that finding a partnership existed in this case unduly expands the definition of partnership [Doc. 10 pp. 9–10]. Unlike as appellant suggests, the Court's finding herein does not mean that all relationships wherein parties cooperate and receive mutual benefit are partnerships. Instead, the Court determines solely that, applying *Tennessee* partnership law as set forth by the Tennessee Supreme Court in *Bass*, a joint business existed under the facts and circumstances of this case given that appellant and Mr. Jones combined their labor, assets, and experience, undertook mutual risk, and cooperated with each other extensively.

Accordingly, the Court finds appellant and Mr. Jones formed a joint business.

---

[9] The Court disagrees with appellant's contention that *Messer Griesheim Industries, Inc. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588 (Tenn. Ct. App. 2001), warrants a different conclusion [Doc. 7 p. 35]. In *Cryotech*, the court held the fact that a secured creditor had rights to control aspects of the debtor's business to protect its security interest did not make the secured creditor a partner of the debtor. *See* 45 S.W.3d at 606–08. An analogous situation does not exist here. Moreover, the *Cryotech* court specifically noted the secured creditor did not share the debtor's business profits. *Id.* at 607. Yet here, as discussed in Part III.B.2, appellant and Mr. Jones shared joint profits.

Further, even if appellant is correct that the instant relationship has common characteristics with other types of financial relationships, *Cryotech* does not provide a per se rule that "facts . . . equally applicable to another form of financial arrangement are insufficient to support a finding [of] partnership" [Doc. 7 p. 34]. True, Tennessee's partnership statute provides that a partnership is a residual business entity formed only when other "association[s]" have not been formed [*See id.* at 34 n.11 (citation omitted)]. *See* T.C.A. § 61-1-202(b). But this statute simply provides that other business *entities* are not partnerships. *See id.*; *see also Story v. Meadows*, No. M2019-1011-COA-R3-CV, 2020 Tenn. App. LEXIS 591, at *21 (Dec. 22, 2020) ("Subsection (b) provides that business associations organized under other statutes are not partnerships[, including] *corporations, limited partnerships, and limited liability companies*." (emphasis added)). It does not, however, suggest that partnerships cannot share characteristics with other types of financial relationships.

23

### 2. Profit-sharing

Appellant argues Judge Bauknight incorrectly concluded appellant and Mr. Jones's relationship was a partnership because the pair had no partnership profit-sharing agreement [Doc. 7 pp. 32–33]. Specifically, appellant argues the profit Mr. Jones would receive from the parties' arrangement was based on an unenforceable contractual obligation to receive a fixed sum rather than a legally-sufficient share of partnership profit [*Id.*; Doc. 10 pp. 5–7]. Further, appellant suggests appellant and Mr. Jones were seeking independent financial gain rather than joint profits [Doc. 7 pp. 32–33].

Appellee responds that a partnership share of profits may be fixed as a matter of law [Doc. 8 pp. 42–45]. Appellee notes appellant and Mr. Jones jointly devoted their property, labor, and skill with profits in mind [*Id.* at 43]. Moreover, appellee suggests appellant ignores that appellant's potential profit was not fixed; that is, appellant would receive all net profits after Mr. Jones received his share [*Id.* at 43–45].

As noted, a partnership is "the association of two (2) or more persons to carry on as co-owners of a business *for profit* . . . ." T.C.A. § 61-1-202(a) (2001) (emphasis added). Profit-sharing is a requirement of partnership. *See Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 470 (Tenn. Ct. App. 2003) (citation omitted). Indeed, the Tennessee Supreme Court has stated that partnership requires the partners to form a joint business "for mutual profit—that is . . . with the understanding

24

that profits will be shared." *Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991) (citation omitted). While "[a] person who receives a share of the profits . . . is [generally] presumed to be a partner," this presumption is inapplicable if the person receives profits, as a payment of, *inter alia*, interest, wages, or rent. T.C.A. § 61-1-202(c)(3); *see also Bowman v. Benouttas*, 519 S.W.3d 586, 600 (Tenn. Ct. App. 2016).

The Court notes the definition of "profit-sharing" as required for partnership formation is not entirely clear. Equally, it is unclear whether two persons sufficiently "share" profits when one person receives a fixed sum of the joint profit while the other receives all net profit. On one extreme, where two alleged partners receive a set percentage of the partnership's residual profits, there is no question those persons are "sharing profits." *See, e.g.*, T.C.A. § 61-1-401(b) (2001). At the other extreme, one who receives payment received as interest, wages, or rent is unquestionably not a partner. *Id.* § 61-1-202(c)(3).

While the Court need not precisely delineate the definition of partnership profit-sharing, the Court finds a partnership can exist even if one partner's share of profits is a fixed sum deriving from an agreement among the partners. The Court has been provided with no authority providing that a partner cannot receive a fixed sum pursuant to an agreement, and indeed, one Tennessee Court of Appeals case suggests the opposite is true. *See Swecker v. Swecker*, 360 S.W.3d 422, 427 (Tenn. Ct. App. 2011)

(discussed *infra*). Moreover, a person who receives a fixed sum of joint profits is nevertheless "sharing profits" in the literal sense of the phrase.[10]

Additionally, while profit-sharing is a requirement of partnership, it is not a characteristic unique to partnerships. Numerous financial arrangements (e.g., employee compensation arrangements) utilize profit-sharing. *See, e.g.*, *Lewis v. Calvert*, No. 3:17-CV-19, 2019 U.S. Dist. LEXIS 10841, at *8–9 (M.D. Tenn. Jan. 23, 2019); *Gore v. Benedict*, 61 S.W. 1054, 1056–57 (Tenn. Ch. Ct. App. 1901). Yet there is no question that these arrangements do not form partnerships, presumably because the payment is for a specific service of the payee (rather than as residual distribution) and because the payee generally has no decision-making authority in the partnership. *See, e.g.*, *Lewis*, 2019 U.S. Dist. LEXIS 10841, at *1–4, *9. In this respect, these arrangements effectively provide for wages or interest and thus are not partnership profit-sharing arrangements. *See* T.C.A. § 61-1-202(c)(3) (2001). This is not to say the profit-sharing requirement is meaningless. However, because profit-sharing is not unique to partnership formation, it seems inappropriate to unduly narrow the definition of partnership profit-sharing.

The Court further finds support for its holding in three pertinent cases. First, in *Swecker*, 360 S.W.3d 422, a father operated a dairy farm with his son for several years. *Id.* at 424. The appellants in *Swecker* argued no partnership existed because the son

---

[10] The Court notes its holding is consistent with the notion that partners may freely allocate risks and return among themselves. *See generally* T.C.A. § 61-1-103 (2001) (amended 2002) (providing a partnership agreement may govern all aspects of a partnership with few exceptions).

26

received a fixed monthly salary and therefore did not share profits. *Id.* at 427. The Tennessee Court of Appeals rejected this argument and stated the fact that the son "was paid a set monthly amount . . . does not mean that he did not share in the profits . . . ." *Id.* The court emphasized that "[t]here [wa]s simply no proof regarding what [the monthly salary] was based upon, and the fact that it was a set amount, does not necessarily show that it was not an arrangement that shared the profits . . . ." *Id.* Thus, the court suggested even a partner who receives an agreed fixed sum of profits may be a partner so long as the fixed sum is indeed paid from the residual profits of the business.[11]

Second, in *Webster v. Estate of Dorris*, No. M2014-2230-COA-R3-CV, 2016 Tenn. App. LEXIS 81 (Feb. 4, 2016), the plaintiffs purchased a residence from a husband and wife after the wife, a real estate agent, listed the residence for sale. *Id.* at *2–3. The issue in the case turned on whether the husband and wife formed a partnership to construct, market, and sell the residence. *See id.* at *8. The Tennessee Court of Appeals held the husband and wife had not formed a partnership. *Id.* at *13. The court reasoned that the wife had no control over and participated in no managerial decisions with respect to organizing the residence's construction. *See id.* at *7–15. Briefly considering profit-sharing, the court noted the husband and wife did not share profits; rather, the wife

---

[11] The Court recognizes the monthly salary in *Swecker* is somewhat distinguishable. In *Swecker*, the son's monthly salary seems to have been aggregately indefinite because the son's services were presumably perpetual. *See Swecker v. Swecker*, 360 S.W.3d 422, 427 (Tenn. Ct. App. 2011). But Mr. Jones's profits were fixed as either exactly $100,000 or the payment required under the promissory note. Nevertheless, the language in *Swecker* suggests a person may be a partner even if she receives a fixed sum of the profits.

27

only received a 3% commission from the real estate company for which she worked. *Id.* at *17–19.

Finally, the Court considers *Quality Manufacturing Systems, Inc. v. R/X Automation Solutions, Inc.*, No. 3:13-CV-260, 2016 U.S. Dist. LEXIS 63743 (M.D. Tenn. May 13, 2016), which appellant cites for the proposition that Mr. Jones's payment was a contractual payment not akin to shared profits [Doc. 7 p. 33]. In *Quality Manufacturing*, the defendant executed a contract with the plaintiff and agreed to develop and market the plaintiff's pill counter. 2016 U.S. Dist. LEXIS 63743, at *2. Ultimately, the plaintiff sued the defendant for, *inter alia*, breach of fiduciary duty. *Id.* at *3. The plaintiff argued the parties formed a partnership and therefore that the defendant owed the plaintiff fiduciary duties, which the defendant allegedly breached. *Id.* at *6–7. After discussing *Swecker* and *Dorris*, the Middle District of Tennessee held the plaintiff and the defendant had not formed a partnership. *Id.* at *12. The court found the parties had no joint business because while the parties had executed the pill-counter contract, the parties had no written partnership agreement, they did not file joint tax returns, and they had no control over each other's businesses. *Id.* at *11–12. The court only briefly addressed the profit-sharing requirement in stating "the parties did not share losses[ or] profits" and that payments between the parties "were based on a contracted amount, not based on a calculation of profit." *Id.*

Appellant emphasizes this latter quote in arguing that Mr. Jones's payment was a fixed contractual sum rather than a share of profits. However, this quote merely reflects

28

the court's finding that the specific payment arrangement at issue in *Quality Manufacturing* was contractual. This construction is sensible considering the court separately stated "the parties did not share . . . profits." *See id.* at *11. Regardless, *Qualify Manufacturing* does not change the Court's conclusion because nothing in the opinion creates a per se rule that a partnership share of profits cannot be fixed; meanwhile, *Swecker* suggests a partnership share of profits may be fixed.

The Court finds appellant and Mr. Jones agreed to share profits in this case. As a preliminary matter, it is important to define the total profits at issue. Specifically, based on the joint business described in Part III.B.1, appellant and Mr. Jones would share the total profits created by their joint business. Mr. Jones's share would be $100,000 or the amount due under the promissory note, depending on when (if at all) appellant could obtain financing. Appellant would then receive all remaining profit from their arrangement.

The Court rejects the argument that Mr. Jones's profits were independent from appellant's profits and were based on a fixed contractual sum. First, the Court notes Mr. Jones's profits were not in fact fixed because his profits would fluctuate based on whether and when appellant could obtain financing. Even if Mr. Jones's profits were fixed, Mr. Jones still shared profits because his profits derived from the total profits created by the partnership as described. Moreover, Mr. Jones's profits were not

contractual because by nature of the arrangement, Mr. Jones agreed to receive nothing in the event appellant could not obtain financing.[12]

Therefore, the Court finds the profit-sharing requirement is satisfied in this case.[13]

## II. Conclusion

For the foregoing reasons, the State Court Action is part of appellant's bankruptcy estate. Therefore, Judge Bauknight's decision will be **AFFIRMED**, and the instant appeal will be **DISMISSED**. A separate order will enter.

ENTER:

s/ Thomas A. Varlan

UNITED STATES DISTRICT JUDGE

---

[12] This risk is consistent with the maxim that while partners share profits, they also share losses. *See* T.C.A. § 61-1-401(b) (2001). Loss-sharing distinguishes partnership profit-sharing from other types of payments. For example, a payee of interest or wages is generally entitled to payment regardless of the partnership's profitability. But a partner is not entitled to a share of profits if the undertaking is unprofitable. *See Lichtenstein v. Mbna Am. Bank, N.A.* (*In re Comput. Personalities Sys.*), 284 B.R. 415, 422–23 (Bankr. E.D. Penn. 2002) (stating that no partnership profit-sharing occurs if one party "receives a fixed sum, irrespective of the venture's profits or losses" (citation omitted)).

Appellant and Mr. Jones's relationship reflects this type of loss-sharing. For example, appellant himself recognizes Mr. Jones was not guaranteed payment and that Mr. Jones could be left with an asset he never intended to own [Doc. 7 p. 25; Doc. 10 pp. 11–15; *see also* Doc. 6-15 p. 6 (noting Mr. Jones's motivation for entering the arrangement was in part because he was "*trying* to earn a favorable return on his investment" (emphasis added))]. *See In re Lamb*, 36 B.R. 184, 188–89 (Bankr. E.D. Tenn. 1983) ("The absence of a definite obligation to repay [a loan], without regard to the business's fortunes, indicates that the person who 'lent' the money is really a partner rather than a creditor." (citation omitted)).

Separately, the Court summarily rejects the contention that Mr. Jones's profit is not shared profit because the parties never "actually shared any . . . profits" [Doc. 10 p. 5]. Under such reasoning, no partnership could ever exist until becoming profitable, and this reasoning ignores that partners also share losses. *See* T.C.A. § 61-1-401(b) (2001).

[13] Even if the Court had determined appellant and Mr. Jones did not share partnership profits, it is possible they formed a joint venture because authority suggests formation of a joint venture does not require profit-sharing. *See Birdsong v. Eli Lilly & Co.*, No. 3:10-1182, 2011 U.S. Dist. LEXIS 35654, at *15–16 (M.D. Tenn. Mar. 31, 2011) (citations omitted). The Court abstains from definitively ruling as to whether appellant and Mr. Jones alternatively formed a joint venture.

30